## Case No. 11,307.

### POSTMASTER GENERAL v. FENNELL et al.

### [1 McLean. 217.] [1]

Circuit Court, D. Kentucky. May Term, 1834.

POST OFFICE BOND — SUIT AGAINST SURETIES — LIMITATIONS—WHEN STATUTE BEGINS TO RUN.

1. Suit must be brought against the sureties of a post master, within two years from the time the post master made default. or the statute bars the action against them.

[Cited in Roddy v. United States, Case No. 11,990.]

2. The defalcation is to be counted from the time the law requires the moneys to be paid over, viz. at the end of every three months; and not from the time the post master shall fail to pay the draft of the department.

[This was a writ of error from the district court. in an action of debt by the plaintiff against Nimrod F. Fennell and others, as sureties for Richard J. Jackson.]

The District Attorney, for plaintiff.
Mr. Crittenden, for defendants.

OPINION OF THE COURT. This action was commenced in the district court to recover a balance due by Richard J. Jackson, late post master at Georgetown, Kentucky, for whose faithful performance of his duties the defendants Fennell and Warren were sureties. The sureties pleaded the statute of limitations, which requires suits to be brought against the sureties of a post master within two years from the time the defalcation occurs. Under the instructions of the district court the plea was sustained, and a judgment was rendered for the defendants. To reverse this judgment the writ of error in this court is prosecuted. On the trial it appeared that Jackson had been removed from office on the last of August, 1830. The last items, charged in the account were for the receipts of postage for the quarter ending on the last of June. 1830, and the two months of the succeeding quarter, up to the time of removal.

On the part of the plaintiff, instructions to Jackson the post master. were given in evidence, in which he was directed to retain the money in his hands until drawn for by the department. And the draft for the last item was drawn within less than two years after the defalcation; and the suit was commenced in a short time afterwards. So

that two years had not elapsed from the refusal of the post master to pay the last order, before suit. And it is contended that the last item on which default was made, is to fix the time at which the statute begins to run. The statute was adopted for the benefit of securities and to excite the utmost degree of vigilance in the department. No very strong reason is perceived why, on general principles, all statutes of limitations should not run against the government in case of securities. The rule, it is true, seems to be well established that the government cannot be guilty of laches in this respect. For it is said, if the government by the laspe of time, should be barred, of just claims, great injury would result to the public, through the negligence or inattention of public officers. This may be admitted, and in answer it may be asked whether in every other respect the public does not suffer, and is not continually liable to suffer injury, from the inattention of officers. And why should not the statute of limitations, which is founded in sound policy, and is productive of salutary effects in society, at least where sureties are concerned, operate against the government. In almost all offices involving heavy pecuniary responsibility, the incumbents are required to give security; and these officers are required by law to pay over moneys as they shall come into their hands. Now if they shall fail to do this, and the proper officers shall fail to enforce the law and coerce the payment by suit, or remove the defaulter, the sureties on every principle of sound policy should be exonerated. They rely upon the faithful execution of his duties by the person for whom they have become responsible; and they have a right to rely upon the vigilance and faithfulness of the superior officers whose duty it is to see that the law is faithfully executed. Many cases of extreme hardship to sureties have occurred from the negligence of superior officers and the unfaithfulness of others. Bonds have been enforced against securities. after the lapse of ten or twenty years. when the principal at the time of the defalcation was responsible, but afterwards became insolvent.

Congress in the post office law, have, in opposition to the general policy on this subject provided, that the sureties of a post master shall not be held liable, unless prosecuted within two years from the time the defalcation took place. And the enquiry in the case under consideration is, whether the defalcation occurred at the time the last draft was presented to the post master and not paid or at some other time. The act provides that if any post master or other person authorized to receive the postage of letters and packets shall neglect or refuse to render his accounts, and pay over to the post master general the balance by him due, at the end of every three months, it shall be the duty of the post master general to cause a suit to be commenced against the person or persons so neglecting

or refusing. And it is further provided that if a post master shall fail for one month to make his return, he shall forfeit double the value of the postages, &c. Now this provision that the post master shall make his return and pay over the moneys received for postages in his hands at the end of every three months, is imperative, and cannot be dispensed with by any instructions of the post master general. The law requires the post master to pay over the moneys at the end of every three months—the post master general therefore cannot instruct him that he need not pay the money at the end of three months, but at some other time when a draft from the department shall be presented to him. He may, with propriety, instruct the post master not to deposite the funds in his hands, but hold them to meet the drafts of the department; but these drafts must be drawn when the payment, by the law, is required to be made. And if not so drawn the defalcation which occurs must be counted, under the statute, from the time the law requires the payment to be made, and not from the time the post master failed to pay the draft of the department. More than two years elapsed from the time the post master was removed from office until this suit was commenced; so that the statute bars the action, as against the sureties, if it began to run, at the time the law required the payment to be made. No doubt is entertained on this question, and the judgment of the district court, is, therefore, affirmed.